**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Wells Fargo Bank, N.A., | ) | No. CV08-8014 PCT DGC |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Mary Lou Boone, et al., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ———————————————— | ) | |

The Court held a status conference with the parties on September 4, 2009. Prior to the conference the parties submitted, at the Court's request, a memorandum on the Court's subject matter jurisdiction. Dkt. #109. The Court reviewed the memorandum and remains concerned about its authority to become – and the advisability of becoming – involved in matters of tribal government. The Federal Government has "a longstanding policy of encouraging tribal self-government." *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 14 (1987). "This policy reflects the fact that Indian tribes retain attributes of sovereignty over both their members and their territory." *Id*. (citation omitted).

> Even in matters involving commercial and domestic relations, we have recognized that subjecting a dispute arising on the reservation among reservation Indians to a forum other than the one they have established for themselves may undermine the authority of the tribal court . . . and hence . . . infringe on the right of the indians to govern themselves. *A fortiori*, resolution in a foreign forum of intratribal disputes of a more public character . . . cannot help but unsettle a tribal government's ability to maintain authority.

*Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 59-60 (1978) (citations omitted).

The Court and the parties discussed these concerns and the parties' efforts to settle their disagreements. Although the parties have been negotiating a consent decree that would call for a special election, appoint a special master and appellate master, and provide for interim distributions of funds, counsel at the status conference agreed that the resolution could be embodied in a settlement agreement rather than a consent decree. A settlement agreement would simply be an agreement among the various factions claiming the right to govern the tribe. Because it would be signed by all individuals with an arguable right to tribal governance and would be made expressly binding on the tribe and its members, the settlement agreement would appear to constitute a final and binding agreement. Because it would not be a consent decree signed by the Court, the Court would have no role in matters of tribal government. The Court would simply distribute the interpled funds as agreed in the settlement agreement, discharge the Plaintiff banks from further responsibility, and dismiss this action.

The parties at the conference provided the Court with a draft of the consent decree. In establishes a freestanding mechanism for conducting a tribal election and resolving all disputes arising from the election. It provides for the interpled funds to be deposited in a bank and for interim distributions to be made under the direction of the special master. It appears that the draft consent decree easily could be converted to a settlement agreement. It also appears that, pursuant to the settlement agreement, this interpleader action could be dismissed and the funds paid out to the bank to be governed by the special master and the terms of the settlement agreement. Such a resolution would not, in the Court's view, improperly embroil the Court in matters of internal tribal governance.

**IT IS ORDERED:**

1. On or before November 13, 2009, the parties shall provide the Court with a final, fully-executed version of the settlement agreement. The agreement shall call for the Court to transfer the interpled funds as provided in the agreement, discharge the Plaintiff banks from further responsibility, and promptly dismiss this action. If the parties are unable to reach agreement by November 13, 2009, the Court will proceed with this interpleader

action and will consider whether it should decline to exercise jurisdiction given the likelihood that deciding the disputed issues in this action would inject the Court into matters of internal tribal governance. If the action were to be dismissed on this basis, the Court likely would return the interpled funds to the Plaintiff banks.

2.      The parties agreed at the status conference that the San Juan Southern Paiute Tribe will waive its sovereign immunity for purposes of this action as set forth in the settlement agreement, thereby eliminating issues about whether the tribe should be dismissed from this interpleader action on sovereign immunity grounds.

DATED this 8th day of September, 2009.


_____
David G. Campbell
United States District Judge